IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CARLTON BURTON, SR,<br><br>Defendant. | Case No.: 3:20-cr-00076-AN<br><br>OPINION AND ORDER |

On March 29, 2024, *pro se* defendant Carlton Burton, Sr. filed the present Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i). The government opposes the motion. For the reasons set forth below, defendant's motion is DENIED.

**LEGAL STANDARD**

Under 18 U.S.C. § 3582(c)(1)(A)(i), a sentencing court may modify a term of imprisonment if (1) the defendant has fully exhausted his administrative remedies; (2) the Court finds that "extraordinary and compelling reasons warrant such a reduction"; (3) the Court considers the relevant factors in 18 U.S.C. § 3553(a); and (4) reducing the defendant's sentence is consistent with applicable policy statements issued by the Sentencing Commission.

Pursuant to U.S. Sentencing Guideline ("USSG") § 1B1.13(b)(1)(C), "extraordinary and compelling reasons exist" if "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." This category for an "extraordinary and compelling reason" was recently added via amendment to the USSGs and became effective as of November 1, 2023. However, the Ninth Circuit has indicated, and continues to indicate post-amendment, that USSG § 1B1.13 is not an "applicable policy statement," and is thus persuasive, but not binding, authority. *See United States v. Holmes*, No. 23-

1

420, 2023 WL 8108461, at *1 (9th Cir. Nov. 22, 2023) (citing *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) favorably for proposition that § 1B1.13 is persuasive, not binding, authority).

18 U.S.C. § 3553(a) includes the following factors:

"(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
"(2) The need for the sentence imposed –
"(A) to reflect the seriousness of the offense, to promote the respect for the law, and to provide just punishment for the offense;
"(B) to afford adequate deterrence to criminal conduct;
"(C) to protect the public from further crimes of the defendant; and
"(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
. . . .
"(4) the kinds of sentence and the sentencing range established for –
"(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
(i) issued by the Sentencing Commission . . . ;
. . . .
"(5) any pertinent policy statement –
"(A) issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2) . . . that is in effect on the date the defendant was sentenced; and
"(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
"(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
"(7) the need to provide restitution to any victims of the offense."

## BACKGROUND

**A.     Procedural History**

In 2019, federal investigators arrested defendant, along with several other co-conspirators, for their involvement in a large-scale methamphetamine distribution conspiracy. Gov't's Resp. to Mot. for Sentence Reduction ("Gov't's Resp."), ECF [246], at 2. Based on physical and electronic surveillance, investigators determined that defendant personally sourced approximately 467.7 grams of methamphetamine across twenty-six separate transactions from a distributor higher up in the conspiracy. *Id.* Defendant's vehicle and residence were searched, uncovering 347 grams of methamphetamine, two cell phones, a loaded .38 caliber pistol, unidentified pills, a round of ammunition, and drug packaging paraphernalia. *Id.* In a subsequent interview with investigators, defendant admitted to having sold methamphetamine to between forty and fifty individuals. *Id.*

On March 19, 2020, defendant was released to pretrial supervision, subject to several pretrial release conditions. *Id.* at 3. After being released, defendant violated his pretrial conditions multiple times. *Id.* The first three violations were for using methamphetamine, after which the Court issued a summons. *Id.* When Pretrial Services attempted to serve the summons on defendant at his residence, he was seen driving a vehicle without a valid license and with an open bottle of alcohol inside the vehicle. *Id.* On February 4, 2021, defendant appeared on the summons and was found in violation of his conditions, but his release was modified and continued. *Id.*

On or about February 19, 2021, defendant absconded from supervision, and a warrant was issued on February 22, 2021. Order Granting Pretrial Release Violation & Warrant, ECF [114]. On March 13, 2021, defendant was arrested on the warrant and detained. Gov't's Resp. 3. Defendant was remanded into custody on March 15, 2021. Order of Revocation of Release & Detention, ECF [118], at 1. In the revocation order, Magistrate Judge Stacie Beckerman found that defendant was unlikely to abide by any condition or combination of conditions of release. *Id.*

On April 8, 2021, defendant pled guilty to one count of Conspiracy to Possess with the Intent to Distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, or 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 846. Plea Pet., ECF [136], ¶ 24. On June 28, 2021, defendant filed a Motion for Review of Detention, seeking limited and conditional release from custody to avoid potential health risks associated with a COVID-19 outbreak at the Multnomah County Inverness Jail. Def.'s Mot. for Review of Detention, ECF [159], at 1. In the motion, defendant argued that a "perfect storm of conditions" made confinement particularly dangerous to his health and reported having been sent to the hospital five or six times in the three months that he had been detained. *Id.* at 1-2. On July 8, 2021, defendant's motion was denied at oral argument. Minutes of Proceedings from July 8, 2021 Oral Arg., ECF [168].

Defendant's offense carried a statutory minimum sentence of ten years imprisonment and, due to his status as a career offender, a sentencing guideline range of 262-327 months. Gov't's Resp. 4. On December 9, 2021, defendant was sentenced to a 100-month incarceration term, to be followed by a five-

3

year supervised release period. J. & Comm., ECF [224], at 2-3. This sentence represented a 3-level downward variance based on the 18 U.S.C. § 3553(a) factors. Statement of Reasons, ECF [225], at 3. Defendant is presently incarcerated at FCI Terminal Island and has a projected release date of April 9, 2027.

**B.     Medical Care History**

Defendant cites his age and medical conditions as the basis for compassionate release. Def.'s Mot. for Sentence Reduction ("Def.'s Mot."), ECF [243], at 4. Defendant alleges that he suffers from Chronic Obstructive Pulmonary Disease ("COPD"), diabetes, congestive heart failure, and high blood pressure. *Id.* at 5. Defendant that he is currently waiting for a pacemaker for his heart, and he currently takes twelve prescription medications. *Id.* at 5, 9. Defendant denies that he requires the use of medical equipment or assistance with daily self-care activities but alleges he does require assisted living. *Id.*

Defendant alleges that while incarcerated he has suffered multiple heart attacks, has difficulty breathing when walking short distances, and has reduced heart function. Decl. of Carlton Burton, Sr., ECF [244], at 3-4. Defendant alleges that he has received outside medical attention multiple times in the past few years to drain fluid from his heart and lungs and for other services related to his heart function. *Id.* at 4. Defendant is reportedly waiting for an appointment with a cardiologist to perform a stress test to determine whether he will need stents or bypass surgery. *Id.* at 3.

Prior to sentencing, the Court was informed that defendant had been diagnosed and treated by the Department of Veterans Affairs for coronary arteriosclerosis, preinfarction syndrome, hyperlipidemia, unstable angina, an inguinal hernia, chronic systolic heart failure, and COPD. Gov't's Resp. 7. Further, the Court was informed that, at the time of sentencing, defendant was prescribed approximately seventeen medications, had difficulty walking short distances, had trouble sleeping, and could only lift minimal amounts of weight. *Id.* Based on defendant's medical issues, the government recommended a 3-level downward variance. *Id.* at 8.

## DISCUSSION

The government concedes that defendant has exhausted his administrative remedies, *id.* at 5, thus, the threshold inquiry is whether defendant has demonstrated that an "extraordinary and compelling reason" warrants a reduction of his sentence. As mentioned, USSG § 1B1.13(b)(1)(C) states that such a reason exists when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

Defendant argues that because of his age and various medical conditions, his incarceration puts his life in jeopardy every day. Defendant emphasizes the multiple heart attacks he has suffered and the numerous times he has been taken to receive outside medical attention since being incarcerated. Defendant further states that his difficulty breathing and frequent inability to walk without stopping to catch his breath are possible indicators that fluid is again building up around his heart and lungs, implying that another hospital visit may be imminent.

Although the government acknowledges defendant's health conditions, it argues that the BOP is actively managing those conditions. The government highlights that defendant makes no claim of being incapable of self-care and offers no evidence of age-related physical or mental deterioration. Indeed, the government notes that, at sentencing, both parties fully informed the Court of defendant's health concerns, and defendant's current health conditions appear to be the same as those identified at sentencing. Therefore, the government argues that there have been no changes in defendant's health that warrant further sentence reduction.

Based on the evidence presently available, the Court finds that the BOP is providing defendant with the medical care that he needs. Since he was first incarcerated, the BOP has transported defendant to outside hospitals on numerous occasions to address his various medical conditions. Defendant makes no claim that these visits were inadequate or unreasonably delayed. Moreover, defendant does not claim that he requires specialized medical care or that he is being denied such care. Although defendant generally alleges that medical care at FCI Terminal Island is unavailable, defendant's own accounts indicate that each time he personally has needed medical attention (e.g., when fluid built up around his heart and

lungs), the BOP transported defendant from custody to an outside hospital where he received the necessary treatment. Furthermore, the BOP is actively managing defendant's health conditions through medication, as defendant reports that he is currently taking at least twelve prescription medications.

Notably, although defendant asserts that he is suffering from a deteriorating medical condition due to aging, defendant has offered no evidence that his health is significantly different than it was three years ago when he was sentenced. At sentencing, the Court was fully informed of defendant's medical concerns when issuing defendant's sentence. Essentially, defendant's motion implies only that he is presently suffering from the same conditions as he was at the time of his sentencing—the singular difference being that he is now sixty-nine, instead of sixty-six, years of age. By all accounts, including defendant's, the BOP is actively and adequately managing defendant's health concerns.

In sum, the Court finds that defendant has not met the threshold requirement of demonstrating an extraordinary and compelling reason warranting a reduction of his sentence. While the Court acknowledges the challenges that chronic medical problems pose, the evidence on the record indicates that the BOP is adequately managing defendant's conditions, and defendant has not experienced a serious deterioration in his health. Therefore, a sentence reduction is not warranted.

## CONCLUSION

Accordingly, defendant's Motion to Reduce Sentence, ECF [243], is DENIED.

IT IS SO ORDERED.

DATED this 1st day of August, 2024.

Adrienne Nelson
United States District Judge